# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

CELIA PAGAN TORRES,

     Plaintiff,

        v.

     Civil No. 10-1265 (GAG)

THE HOUSE OF REPRESENTATIVES
OF THE COMMONWEALTH OF P.R.,
et al.,

     Defendants.

## OPINION AND ORDER

     Celia Pagan Torres ("Plaintiff"), filed a complaint against the House of Representatives of the Commonwealth of Puerto Rico, and against Jenniffer Gonzalez Colon, president of the House of Representatives ("Defendant Jenniffer Gonzalez"), Camille Rivera Perez, director of the Office of Advisors to the President of the House of Representatives of the Commonwealth of Puerto Rico ("Defendant Rivera-Perez"), and Freddy Velez Garcia, administrator of the Office of Administration at the House of Representatives of the Commonwealth of Puerto Rico ("Defendant Velez"), alleging disability discrimination, wrongful termination and retaliation.  The action is brought pursuant to Title I and V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* and Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 1983, 1985; the Rehabilitation Act of 1973 and the First and Fourteenth Amendment of the United States Constitution.  Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate his claims under Puerto Rico state laws, to wit: Puerto Rico Law 44 ("Law 44"), P.R. Laws Ann. tit.1, §§ 501 *et seq.*; Puerto Rico Law 115 ("Law 115"), P.R. Laws Ann. tit. 29, §§ 194 *et seq.*; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Article 1802") P.R. Laws Ann. tit. 31 §§ 5141-5142; and damages claims under the Commonwealth's libel and defamation statute, P.R. Laws Ann. Tit. 32 §§ 3141-3149.

This matter is presently before the court on defendants' motion for summary judgment (Docket No. 67).  Plaintiff timely opposed Defendant's motion for summary judgment (Docket 80) and defendants replied to the opposition (Docket No. 86).  After reviewing the pleadings and pertinent law, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. (Docket No. 67).

## I.      Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law."  Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.      Factual and Procedural Background

Plaintiff alleges she was discharged from her position as legislative advisor to the House of Representatives of the Commonwealth of Puerto Rico because she has a disability.  (See Docket

**Civil No. 10-1265 (GAG)** 3

No.1 at 1.) On January 6, at the age of seventeen, Plaintiff suffered a stroke that paralyzed the left side of her body. (See Docket No. 80-1 at ¶ 2.) As a result, Plaintiff needs a wheel chair and a motorized scooter for her daily activities. (See Docket No. 80-1 at ¶ 2.) Plaintiff earned a Master's Degree in social work from the University of Puerto Rico, and obtained her social worker's license in August of 2000. (See Docket No. 80-1 at ¶ 3.)

She began working at the Puerto Rico House of Representatives on April 9, 2001, for House Representative Oscar Ramos as an administrative aid. (See Docket No. 80-1 at ¶ 4.) Plaintiff's duties were to advise Representative Ramos on Handicapped Legislation, and maintain communication with all pertinent agencies dealing with handicapped individuals. (See Docket No.1 at ¶ 13.) Plaintiff was provided with reasonable accommodation to perform her duties. (See Docket No.1 at ¶ 12.) The reasonable accommodation given to Plaintiff consisted of providing her with a first floor office with easy access, an assistant, and electronic key cards to access the different entrances of the capitol building. (See Docket No.1 at ¶ 12.) She was given a flexible schedule because she needed to attend physical therapy. (See Docket no. 77-2 at 3 L. 18-19.)

Plaintiff expressed at her deposition that in 2001, each accommodation she requested was granted to her. (See Docket No. 77-2 at 5 L. 12.) Between the years 2001-2004, before Plaintiff received a laptop, Plaintiff was able to perform her work by dictating to a coworker who would transcribe her work. (See Docket No. 77-2 at 6 L. 8-13.) In 2004, Plaintiff was provided with the laptop computer. (See Docket No. 77-2 at 8 L. 13-17.) Plaintiff claims this laptop had special features such as, a voice recognition program for word processing and large letters on the keyboard. (See Docket No. 77-2 at 8 L. 13-17, at 9 L. 7-9, 15-17.) While working as an advisor with Representative Oscar Ramos, plaintiff performed all her duties in a satisfactory manner. (See Docket No.1 at ¶ 13.)

Plaintiff continued working as an Advisor to Representative Ramos up to December 2004. (See Docket No.1 at ¶ 13.)

In the year 2005, Plaintiff was assigned to work at the Office of Advisors to the Speaker of the House of Representatives, then the Honorable Jose Aponte Hernandez. (See Docket No.1 at ¶ 15.) Plaintiff was a legislative advisor to the Speaker of the House of Representatives and worked

**Civil No. 10-1265 (GAG)**                              4

1   in the advisor's office of the Speaker of the House.  Her duties included drafting legislation,

2   attending public hearings, representing the Speaker in community events, and coordinating events

3   with the disabled community, among other duties.  (See Docket No. 80-1 ¶ 6-7.)

4          During this four, year term (2004-2008), Plaintiff was given reasonable accommodation.

5   Initially, Plaintiff worked at the second floor of the annex of The House of

6   Representatives, however because the elevator became damaged, Plaintiff was relocated to a first

7   floor office belonging to Representative Yuyo Roman.  Plaintiff was also provided with the same

8   laptop that she had under Representative Oscar Ramos.  According to Plaintiff's deposition, the

9   laptop she had been using was quickly moved to the office of the advisors to the new President of

10  the House Representatives where Plaintiff was relocated.  (See Docket No. 77-2 at 10, L. 7-9, 13 and

11  at 11 L. 8-9.))  Plaintiff was later accommodated to the old State Electoral Commission building,

12  which served as an annex to the House of Representatives.  Plaintiff was also given flexible work

13  hours in order to accommodate medical therapies for her medical condition.  (See Docket No.1 at

14  ¶ 16.) Up until December 31, 2008, while working as a Legislative Advisor for the Advisors' Office

15  of the House of Representatives, Plaintiff performed all her duties in a satisfactory manner.  (See

16  Docket No.1 at ¶ 17.)

17         Defendant Jenniffer Gonzalez took office as Speaker of the House of Representatives on

18  January 12, 2009.  On December 30, 2008, under Hon. Jose Aponte's administration, Plaintiff's

19  appointment was extended effective until January 15, 2009.  In December 2008, Plaintiff was not

20  allowed to access the laptop that had been assigned to her as a reasonable accommodation.  (See

21  Docket no. 77-2 p. 12, l. 18-21.)  At the time, she was informed that the Office of Advisors to the

22  Speaker would relocate to the third floor of the Capitol's main building.  (See Docket No. 77-2 at

23  13, L. 3-5.)

24          By December 2008, most of the trust employees resigned, because all employees at the

25  Office of the Speaker, and their advisors, are at-will employees.  (See Docket No. 68-2 at 25 L.2-4.)

26  Some employees, like Plaintiff, did not resign and Defendant Jenniffer Gonzalez extended their

27  appointments on a month-by-month basis until June 30, 2009.  (See Docket 68-2 at 25 L. 5-11.)

28  Defendant Rivera-Perez became the Director of the Office of Advisors to The Speaker of the House

1  upon the change in political administration, meaning, she became Plaintiff's supervisor.  Also in

2  January 2009, Defendant Velez-Garcia started working at the House of Representatives  as its

3  Administrator.

4          Plaintiff stated in her deposition that she verbally requested reasonable accommodation from

5  Defendant Rivera-Perez at least twenty times.  (See Docket No. 77-2 at 17, L. 5-9.)  According to

6  Plaintiff's deposition, Rivera-Perez instructed her to put the application for reasonable

7  accommodation in writing.  (See Docket No. 77-2 at 19, L. 4-11.)  Plaintiff claims  she hand

8  delivered a letter to defendant Rivera-Perez making a reasonable accommodation request, but

9  Rivera-Perez never further discussed the matter  with her.  (See Docket No. 77-2 at 21, L.5 and at

10  20, L. 18-21.)  Plaintiff also hand-delivered a letter making a request for reasonable accommodation

11  to Defendant Jenniffer Gonzalez's receptionist.  (See Docket 77-6.)  The letter was addressed to the

12  Speaker of the House, Defendant Jenniffer Gonzalez, through Defendant Rivera-Perez.

13          In Plaintiff's letter, she requested the laptop that had been assigned to her in the past.  She

14  also asked to be relocated because the office she had been assigned to was located on the third floor

15  of the Capitol building and was not accessible because "the elevator was continually defective", there

16  was no ramp, she had to climb three steps to get to her office and "there are no accessible bathrooms

17  in the third floor."  In addition, she requested a desk because she did not have one.  (See Docket No.1

18  at ¶ 21.)  Plaintiff claims she handed the letter to Defendant Rivera while she was going out of her

19  office in a rush and Defendant Rivera put it among other papers she was carrying.  Defendants

20  Jenniffer Gonzalez and Velez allege they were not aware of the requests for reasonable

21  accommodation made by Plaintiff. (See Docket No. 68-2 at 43 L. 5-9.)  Plaintiff claims she hand-

22  delivered Defendants Jenniffer Gonzalez and Rivera-Perez another letter dated January 21, 2009,

23  in which she requested a meeting to discuss work related issues such as, pending bills and resolutions

24  directed towards people with disabilities and elderly women.  (See Docket Nos. 80-1 at ¶ 17-19; 80-

25  3.)  These efforts were ultimately unsuccessful.  (See id.)  It is a contested fact whether Defendants

26  Rivera-Perez and Jenniffer Gonzalez received the written requests.[1]

27  _____

28          [1] According to defendants, the House of Representatives Administrative Order No. 03-07,

1    Two months into the new four year term, Plaintiff was given keys to a small office in the
2    basement of the Senate building.  There were three small cubicles and a desk, however Plaintiff's
3    wheelchair did not fit into the cubicles.  At that office, she had no other facilities, she did not have
4    a fax machine, copy machine, computer, telephone or office supplies.  Plaintiff alleges that she had
5    to meet with constituents that were usually disabled and she could not receive them in her office
6    because it was a very small area.  (See Docket No. 80-1 at ¶ 23.)

7    Plaintiff's appointment was extended on three occasions by way of letters dated January 30,
8    2009, February 13, 2009 and March 31, 2009 respectively.  (See Docket Nos. 77-8, 77-9 & 77-10.)
9    The last extension ended on June 30, 2009.  Plaintiff's appointment was terminated by way of a letter
10   dated April 21, 2009, signed by Defendant Velez-Garcia effective May 1, 2009.   As stated in the
11   letter, her termination was because she was an at-will employee.  (See Docket No. 77-11).

12   Defendants allege that Plaintiff was terminated because she violated a policy instituted by
13   Defendant Jenniffer Gonzalez that does not allow advisors to sign letters addressed to people outside
14   the office of advisors.  (See Docket No. 68-2 at 32 L. 11-21.)  As occurred with Plaintiff, the policy
15   is strictly enforced.  (See id.)  Defendant Rivera-Perez alleges she met with personnel on several
16   occasions and gave them instructions regarding the Speaker's rules.  Allegedly, the determination
17   to terminate Plaintiff's appointment was taken by Defendant Jenniffer Gonzalez once she was
18   informed by one of her advisors that Plaintiff was drafting letters for private issues that had nothing
19   to do with office matters, without prior authorization.  (See Docket No. 77-14 at 1-2.)  Plaintiff
20   alleges she did not know about the policy and that she was given a different reason for her
21   termination in her termination letter.

22   The record shows, that Plaintiff drafted two letters dated April 27, 2009 and May 5, 2009,

23

24   enacted August 11, 2003, amended the Regulation Regarding Procedures to Request Reasonable
     Accommodations to require that any employee or person with physical, mental, or sensory
25   limitations or disabilities who requests reasonable accommodations must fill out a Request for
     Reasonable Accommodations form and process it through the Human Resources Office.  The
26   regulation also requires the employee to copy the representative or director of the department or
     legislative office where he/she works. Finally, it states that forms submitted for evaluation which
27   are not duly filled out will not be considered.  (See Docket No. 77-4.)

28

1   in which she requested the Speaker reconsider her decision to terminate her employment and to be

2   reinstated in her position.  (See Docket No. 77-15 and 77-16.)  In these letters she also alleges that

3   she had been subjected to actions which consistently deprived her of her rights and that she was not

4   provided with reasonable accommodation.  It is a contested fact whether or not Defendant Jenniffer

5   Gonzalez received these letters.[2]

6        Plaintiff filed the present complaint on March 29, 2010 (Docket No. 1).  Defendants filed

7   a motion for summary judgment that is presently before the court. (Docket No. 67).  Plaintiff timely

8   opposed defendants' motion for summary judgment (Docket 80) and defendants replied to the

9   opposition (Docket No. 86).

10       **III.    Discussion**

11            **A.    Procedural Due Process**

12       Plaintiff alleges that her due process rights were violated when Defendants fired her without

13   following "[t]he procedures established by the Code of Ethics of Employees of the House of

14   Representatives which provides the mechanisms to investigate and ultimately sanction an employee

15   of the House for any wrongdoing."  (See Docket No. 80 at 8.)

16       A viable procedural due process claim must demonstrate a "deprivation by state action of a

17   constitutionally protected interest in 'life, liberty, or property' . . . without due process of law."

18   Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (internal citations omitted).

19   "The Due Process Clause of the Fourteenth Amendment protects government employees who

20   possess property interests in continued public employment."  Ruiz-Casillas v. Camacho-Morales,

21   415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541

22   (1985); Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004)).  At a minimum, these employees have a

23   right to an informal hearing before they are discharged.  See Kauffman v. Puerto Rico Tel. Co., 841

24   F.2d 1169, 1173 (1st Cir. 1988).

25       In order to determine whether public employees possess such a property right, the First

26   Circuit requires the court to examine local law and the terms and conditions of the employment

27

28   [2] Plaintiff alleges that the letter was stamped as received while Defendant Jenniffer Gonzalez alleges that she did not receive said letter.

1    arrangement.  See Ruiz-Casillas, 415 F.3d at 134.  Under Puerto Rico law, public employees are

2    categorized into either career or trust/confidential positions.  See id. (citing P.R. Laws Ann. tit. 3,

3    § 1349).  Trust or confidential employees "intervene or collaborate substantially in the formation of

4    the public policy, [and] . . . advise directly or render direct services to the head of the agency . . . ."

5    Id. (quoting P.R. Laws Ann. tit. 3, § 1350).  Unlike career employees, who are removable only for

6    cause, trust employees are of "free selection and removal."  Id. (quoting P.R. Laws Ann. tit. 3, §

7    1350).  Therefore, "trust [employees] do[] not have a constitutionally protected property interest in

8    that position."  Galloza, 389 F.3d at 34.

9          It is an uncontested material fact that Plaintiff's position as an advisor to the President of the

10   House of  Representatives was a trust/confidential position and therefore, Plaintiff has no rights to

11   due process for her termination.

12          Accordingly, the court **GRANTS** defendants' motion for summary judgement on this

13   ground and dismisses Plaintiff's due process claim with prejudice.

14                       **B.    Equal Protection**

15          Plaintiff alleges that defendants acted under color of state law in depriving her of her equal

16   protection rights when she was not afforded reasonable accommodation.

17          Under the Equal Protection Clause, similarly situated persons are entitled to receive similar

18   treatment at the hands of government actors.  See Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d

19   50, 57 (1st Cir. 2006); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Equal

20   protection claims are predicated on the unfair application of a statute, regulation or any other sort

21   of government regulatory action to a protected group of citizens.  See Mills v. Habluetzel, 456 U.S.

22   91, 102 (1982).  A necessary element in an equal protection claim is proof of intent to discriminate.

23   See Soto v. Flores, 103 F.3d 470, 474 (1st Cir. 2000).

24          To plead a viable equal protection claim, a plaintiff must allege facts indicating selective

25   treatment "compared with others similarly situated . . . based on impermissible considerations such

26   as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad

27   faith intent to injure a person."  Aponte-Torres, 445 F.3d at 57.  See Barrington Cove Ltd. Pship v.

28   R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (emphasis omitted).. A similarly

1 situated person is one that is roughly equivalent to the plaintiff in all relevant respects.  See Estate
2 of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008) (internal citations and quotation marks
3 omitted).  The complaint fails to satisfy this requirement.

4       Plaintiff alleges that she is a disabled employee of the House of Representatives that had
5 always been afforded reasonable accommodation during the eight years she worked as an advisor.
6 Allegedly when Defendant Jenniffer Gonzalez became Speaker of the House Plaintiff  was denied
7 her previous accommodation and was ultimately terminated from her job as legislative assistant to
8 the Speaker because of her disability.  However, these allegations do not suffice to state a viable
9 equal protection claim, because the allegedly differential treatment was not "based on impermissible
10 considerations" such as, race, religion, intent to inhibit or punish the exercise of constitutional rights,
11 or malicious or bad faith intent to injure a person.   Aponte-Torres, 445 F.3d at 57.

12       Accordingly, the court **GRANTS** defendants' motion for summary judgement on this ground
13 and dismisses Plaintiff's equal protection claim with prejudice..

14                    **C.    Exhaustion of Administrative Remedies.**

15       Defendants allege that Plaintiff's claim under the ADA must be dismissed for her failure to
16 exhaust administrative remedies.

17       In Bonilla v. Muebles J.J. Alvarez, Inc., the First Circuit held that claims under the ADA are
18 identical to claims under Title VII in that the claimant first must exhaust administrative remedies by
19 filing a charge with the EEOC[3] (or alternatively, with an appropriate state or local agency).  194 F.3d
20 275 (1st Cir. 1999).  The charge must be filed within a specified and relatively short time period,
21

22 [3] Since Puerto Rico is a 'deferral state' or a state with a certified Fair Employment Practice
23 Agency ("FEPA"), this process begins when a claimant files a charge of discrimination with
either the state FEPA, in this case the Anti Discrimination Unit, or with the EEOC.  See Perez
24 Cordero v. Wal-Mart PR, Inc., 235 F. Supp. 2d 95, 100 (D.P.R. 2002) (citations omitted).  In
their Worksharing Agreement, "the EEOC and the FEPA each designate the other as its agent
25 for the purpose of receiving and drafting charges, including those that are not jurisdictional
with the agency that initially receives the charges."  Lopez-Machin v. Indupro, 668 F. Supp.
26 2d 320, 325 (D.P.R. 2009).  "[T]he Worksharing Agreement also establishes that Title VII
27 charges filed with the Commonwealth are considered dual-filed, and 'vice versa.'"  Id.
(internal citations omitted).  Accordingly, the filing of an administrative charge with the ADU
28 is considered a filing with the EEOC.

1   usually 180 or 300 days,[4] after the discrimination complained of.  Also, the lawsuit has to be brought

2   within an even shorter period of ninety days after notice that the administrative charge has been

3   dismissed or after the agency instead issued a right-to-sue letter.  42 U.S.C. § 2000e-5(f)(1).

4   Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1 (1st Cir. 2001) (citing Zipes v. Trans

5   World Airlines, Inc., 455 U.S. 385, 393-95 n.12, (1982)).  This omission bars the courthouse door.

6          The record shows that Plaintiff timely filed a charge with the EEOC and presented the instant

7   complaint within ninety (90) days of the right to sue letter.  (See Docket Num. 1-2.)  Thus, the Court

8   **DENIES** defendants' motion for summary judgement on the grounds that Plaintiff did not exhaust

9   administrative remedies.

10                **D.    ADA Claim and ADA Reasonable Accommodation Claim**

11          The ADA prohibits covered employers from discriminating against a qualified individual

12   with a disability.  42 U.S.C. § 12112(a).  A qualified individual is one "who, with or without

13   reasonable accommodation, can perform the essential functions of the employment position that such

14   individual holds or desires." Id. at § 12111(8).  Discrimination under the ADA includes "not making

15   reasonable accommodations to the known physical or mental limitations of an otherwise qualified

16   individual with a disability who is an applicant or employee, unless . . . the accommodation would

17   impose an undue hardship on the operation of the business."  Id. at §12112(b)(5)(A).

18          To establish a claim under the ADA, a plaintiff must demonstrate three factors by a

19   preponderance of the evidence: (1) she was disabled within the meaning of the ADA; (2) she was

20   qualified to perform the essential functions of the job, either with or without reasonable

21   accommodation; and (3) the employer took an adverse employment action against her because of the

---

24   [4] "In Puerto Rico, an aggrieved employee has 300 days from the occurrence of the employment
25   action complained of to file an administrative charge in instances where the local Department
     of Labor is empowered to provide relief, i.e., in instances of 'deferral' jurisdiction."  Rivera
26   Abella, 470 F. Supp. 2d 86, 102 (D.P.R. 2007) (citing Bonilla v. Muebles J.J. Alvarez, Inc.,
     194 F.3d 275, 278 n.4 (1st Cir. 1999); Lebron-Rios v. U.S. Marshal Service, 341 F.3d 7, 11
27   n.5 (1st Cir. 2003)).  "Otherwise, the applicable period is 180 days."  Rivera Abella, 470 F.
     Supp. 2d at 103 (citing 42 U.S.C. § 2000e-5(e)(1)).
28

1  alleged disability.  See Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002); see also

2  Ríos–Jiménez v. Principi, 520 F.3d 31, 41 (1st Cir. 2008);  Colon-Fontanez v. Municipality of San

3  Juan, 660 F.3d 17, 32 (1st Cir. 2011). Plaintiff may prove her case by presenting direct evidence of

4  discrimination or she may prove it indirectly "by using the prima facie case and burden shifting

5  methods that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973)." Jacques v.

6  Clean–Up Grp. Inc., 96 F.3d 506, 511 (1st Cir. 1996) (quoting Katz v. City Metal Co., 87 F.3d 26,

7  30 n. 2 (1st Cir.1996)) (internal quotation marks omitted).

8       The McDonnell Douglas analysis requires the plaintiff to offer evidence sufficient to

9  establish that he "(i) has a disability within the meaning of the [ADA]; (ii) is qualified to perform

10  the essential functions of the job, with or without reasonable accommodations; (iii) was subject to

11  an adverse employment action by a company subject to the [ADA]; (iv) was replaced by a

12  non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered

13  damages as a result." Id.  If he establishes a prima facie case, the burden shifts to the employer to

14  articulate a legitimate, non-discriminatory reason for its action. Ramos-Echevarria v. Pichis, Inc.,

15  659 F.3d 182, 187 (1st Cir. 2011), Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st

16  Cir. 2007); see also McDonnell Douglas Corp., 411 U.S. at 802.  If the employer offers a

17  non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's

18  justification is a mere pretext used to cloak the discriminatory animus. Freadman, 484 F.3d at 99.

19  Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).

20       A "failure-to-accommodate" claim has a different set of requirements from the

21  "disability-discrimination" claim.  To survive summary judgment on her "failure to accommodate,"

22  plaintiff must:  (a) furnish sufficient admissible evidence she is a qualified individual with a

23  disability within the meaning of the ADA; (b) establish that she worked for an employer covered by

24  the ADA; (c) demonstrate that the employer, despite its knowledge of the employee's limitations,

25  did not accommodate those limitations; and, (d) show that the employer's failure to accommodate

26  the known limitations affected the terms, conditions or privileges of the plaintiff's employment. See

27  Orta Castro v. Merck, Sharp & Dome Quimica P.R. Inc., 447 F.3d 109, 112 (1st Cir. 2006); Tobin

28  v. Liberty Mut. Ins. Co., 433 F.3d 100, 107 (1st Cir. 2005); Estades Negroni v. Assoc. Corp. of N.

Am., 377 F.3d. 58, 63 (1st Cir. 2004); Rodriguez-Fernandez v. First Medical Health Plan, Inc., Civil No. 08-1787CCC, 2010 WL 5072584, at *7 (D. P. R. Dec. 10, 2010).  The Court will examine if Plaintiff met the above mentioned requirements.

### 1.      Prima Facie Case

#### a.      Qualified Individual with a Disability within the Meaning of the ADA

Plaintiff has proven that she is disabled within the meaning of the ADA.[5] She established that she suffered a hemorrhagic stroke when she was seventeen years old and has been a hemiplegic person ever since.  She requires a wheel chair and a motorized scooter to move around.

Whether an individual is qualified under the ADA is a two-step analysis. See 29 C.F.R. § 1630.2(m).  The employee bears the burden to show, first, that she possesses the requisite skill, experience, education, and other job-related requirements for the position, and second, that she is able to perform the position's essential functions with or without reasonable accommodation "and if not, whether 'any reasonable accommodation by her employer would allow her to do so.'" Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006) (quoting Phelps v. Optima Health, Inc., 251 F.3d 21, 25 (1st Cir.2001)). Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 32-33 (1st Cir. 2011).  We address each in turn.

Construing the record in the light most favorable to the non movant, Plaintiff  satisfies the first prong.  Plaintiff possesses a Master's degree in Social Work from the University of Puerto Rico and obtained a license as a Social Worker.  The record shows that Plaintiff met performance levels at work.  She worked for eight straight years in the legislature.  First as an aid for House Representative Oscar Ramos where she served as an advisor regarding legislation for the benefit of the disabled community and as legislative advisor to the Speaker of the House of Representatives,

---

[5]  Under the ADA, a disability is a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2)(A) (1990). Disability may also be established by having a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. § 12102(2)(B), (C) (1990); see also Santiago Clemente v. Exec. Airlines, Inc., 213 F.3d 25, 30 (1st Cir.2000). Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).

1   Jose Aponte Perez.  During those years she always received excellent evaluations.

2        She started an initiative called a "Capitol for All" in 2001, that was directed towards making

3   the Capitol accessible to people with disabilities.  (See Docket No. 17-12. at 13, L.11-18.)  This

4   initiative was adopted by all past Senate presidents.  (See Docket No. 17-12. at 13, L.14-16.)  She

5   helped draft a book that was named "The Bill of Rights." which includes all laws  that protect

6   persons with disabilities.  She participated in an activity that was held once a year on  the third of

7   December called the International Day of Persons with Disabilities.  (See Docket No.  17-12. at 14,

8   L.3-6.)  This evidence demonstrates that Plaintiff possesses the requisite skills, experience and

9   education to perform her job duties.

10        Plaintiff also demonstrates she was able to perform the position's essential functions with

11   or without reasonable accommodation.  An essential function is one that "bear[s] more than a

12   marginal relationship to the job at issue." Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir.

13   1993). It is a "fundamental job duty . . . [that] can extend beyond 'an employee's technical skills and

14   experience.' " Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 22 (1st Cir. 2004) (quoting Ward

15   v. Mass. Health Research Inst., Inc., 209 F.3d 29, 34 (1st Cir. 2000)) (internal quotation marks

16   omitted).  [The First Circuit—as well as the majority of circuit courts—has recognized that

17   "attendance is an essential function of any job." See Ríos–Jiménez v. Principi, 520 F.3d 31, 42 (1st

18   Cir. 2008).]

19        The record shows that when Plaintiff was provided with some sort of reasonable

20   accommodation by her employer, she was able to perform her position's essential functions.

21   Plaintiff satisfactorily performed the work functions with the use of a laptop computer.  Prior to

22   receiving the laptop which, according to the record, she received three years after requesting it,

23   Plaintiff was able to dictate to a co-worker that would transcribe her work.  Therefore,     Plaintiff

24   has satisfactorily demonstrated that she is a qualified individual with a disability within the meaning

25   of the ADA.

26                    **b.**     **Establish that She Worked for an Employer Covered by**

27                            **the ADA**

28        Plaintiff has established that she worked uninterruptedly for eight years at the legislature and

1    that the legislature is an employer covered by the ADA.

2         The ADA prohibits certain employers, including the States, from "discriminat [ing] against

3    a qualified individual with a disability because of the disability of such individual in regard to job

4    application procedures, the hiring, advancement, or discharge of employees, employee

5    compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.

6    §§ 12112(a), 12111(2), (5), (7). 42 U.S.C. § 12131(1)(A)-(B) defines public entities covered by the

7    ADA as any state or local government.[6]

8                        **c.      Employer, Despite its Knowledge of the Employee's**

9                                **Limitations, did not Accommodate those Limitations**

10        The record shows that defendants knew about Plaintiff's physical limitations.  The record

11   also shows that defendants did not accommodate those limitations from January through May 2009.

12   Plaintiff established in her deposition that she verbally requested reasonable accommodation, at

13   least twenty times, from Defendant Rivera-Perez.  (See Docket No. 77-2 at  17, L. 5-9.)  At the

14   time, Defendant Rivera-Perez was the director of the Office of Advisors to the President of the

15   House of Representatives.  Defendant Rivera-Perez told Plaintiff that she had to put the application

16   for reasonable accommodation in writing and she did.  (See Docket No. 77-2 at 19, L. 4-11.)

17   Plaintiff claims that she personally handed the letter to Defendant Rivera while she was going out

18   of her office in a rush and she saw when Defendant Rivera put it among other papers she was

19   carrying.  However, Defendant Rivera-Perez alleges that she did not receive the request.  (See

20   Docket No. 77-2 at 21, L.5 at 20, L. 18-21.)  Plaintiff also alleges that she hand-delivered to

21   Defendant Jenniffer Gonzalez's receptionist a letter, addressed to the Speaker of the House, making

22   a request for reasonable accommodation.  (See Docket No. 77-6.)  However, Defendant Jenniffer

23

24   _____

25        [6] To this end, the Act requires employers to "mak[e] reasonable accommodations to the
     known physical or mental limitations of an otherwise qualified individual with a disability who is
26   an applicant or employee, unless [the employer] can demonstrate that the accommodation would
     impose an undue hardship on the operation of the [employer's] business."  42 U.S.C. §
27   12112(b)(5)(A).  See Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 360, 361 (2001).

28

Gonzalez also alleges that she did not receive the letter.  (See Docket No. 68-2 p.43 l. 5-9.)  In Plaintiff's letter she requested the laptop that had been assigned to her as reasonable accommodation in the past.  She also reminded the recipients that the location she was assigned to was not accessible because "the elevator was continually defective" and "there are no accessible bathrooms in the third floor."  (See Docket No. 80-2.)  After hand-delivering the above mentioned letter, Plaintiff supposedly tried to meet with Defendant Jenniffer Gonzalez on numerous occasions, but she was never granted a meeting.  (See Docket no. 77-2 at 24, L.12-15.)  Plaintiff claims that she turned in a second letter dated January 21, 2009.  (See Docket No. 80-3.)  It is a contested fact whether or not Defendants Rivera-Perez and Jenniffer Gonzalez received the written requests.[7]

In March 2009, Plaintiff was relocated from the office located at third floor of the Capitol Building to an office at the basement of that building.  Defendants allege the decision to locate Plaintiff in the basement was made because there was space where she could fit the wheelchair and she had all the equipment she needed there.  Plaintiff counter alleges that her wheelchair did not fit in that office and that the office lacked basic equipment such as a telephone, fax, computer, copy machine and office materials.  (See Docket No. 80-1 at ¶ 23.)  In addition, there was no space at that office for her to meet with handicapped constituents who came to see her requesting for services.  (See Docket Num. 77-2 p. 17, l. 11-13.)  She had to meet with them at other areas of the Capitol that were not well suited for her to carry out her duties.  (See Docket No. 1 at ¶ 23.)  Thus, the reason for locating Plaintiff at the basement is a contested fact.

The record shows that Plaintiff's numerous requests for reasonable accommodation were ignored and when she finally was relocated she was assigned to a location where her limitations

_____

[7] According to defendants the House of Representatives Administrative Order No. 03-07, enacted August 11, 2003, amended the Regulation Regarding Procedures to Request Reasonable Accommodations to require that any employee or person with physical, mental, or sensory limitations or disabilities who requests reasonable accommodations must fill out a Request for Reasonable Accommodations form and process it through the Human Resources Office, and copy the Representative or Director of the Department or Legislative Office where he/she works. Also, the regulation states that forms submitted for evaluation which are not duly filled out will not be considered.  (See Docket No. 77-4.)

were not properly accommodated.  Therefore, the evidence meets this prong of the test.

> **d.      Employer's Failure to Accommodate the Known Limitations Affected the Terms, Conditions or Privileges of the Plaintiff's Employment.**

The record shows that from January to May 2009 Plaintiff requested reasonable accommodation and it was not given to her.  She was not given the computer she had used between 2004 and December 2008.  In January 2009, the office of advisors to the President of the House of Representatives was moved to the third floor of the capitol building**,** where the elevator was constantly out of service and there was no ramp to access the office.  Also, there were no accessible restrooms at that floor.  (See Docket No. 80-2.)  When Plaintiff was relocated to the basement office, where there was no basic office equipment there, and her wheelchair did not fit at the desk she was given.  The office space was small and cramped and she could not perform her duties because the handicapped constituents that came to see her requesting services could not physically fit in the office with her.

A reasonable fact finder could conclude that defendants' failure to accommodate Plaintiff's limitations affected the terms, conditions and privileges of her employment. Therefore**,** Plaintiff survives summary judgment on her failure to accommodate claim.  Because Plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.

> **2.      Legitimate Non-Discriminatory Reason for Termination**

Defendants express that Plaintiff was legitimately terminated because she violated a "well-known" strict office policy instituted by Defendant Jenniffer Gonzalez, regarding the fact that advisors are not authorized to sign letters addressed to people outside the office of advisors.  (See Docket No. 67 at 24.)  Supposedly Defendant Jenniffer Gonzalez decided to terminate Plaintiff when she was informed by one of her advisors that Plaintiff was drafting letters for private issues that had nothing to do with office matters, without prior authorization from Defendant Jenniffer Gonzalez or Defendant Rivera-Perez.

Allegedly, Plaintiff drafted a letter as an advisor to the Speaker, asking the Secretary of the

Treasury to intervene as to the payment of some checks to some entities.  (See Docket No. 77-14 at 1-2.)  Defendants contend that Defendant Rivera-Perez met with personnel on several occasions and gave them the instructions regarding the Speaker's rules and instructions.  (See Docket No. 67 at 24.)

### 3.     Pretext

Plaintiff attempts to show that the employer's justification for her termination is mere pretext cloaking discriminatory animus because on her termination letter dated April 21, 2009, the only reason proffered as an explanation for the dismissal was that all House of Representatives employees are "at will" employees.  (See Docket No. 77-11 and 80-1 at ¶ 25.)  The record shows that no other reason was provided for Plaintiff's termination.  (See Docket No. 80-1 at ¶ 46.)

In addition, Plaintiff alleges that defendants' justification is a pretext because she did not know about the existence of the above mentioned policy.  (See Docket No. 80-1 at ¶ 38.)  Plaintiff further alleges that she was excluded from advisors' meetings with Defendant Jenniffer Gonzalez and that her multiple verbal and written requests to meet with both Defendant Jenniffer Gonzalez and Defendant Rivera-Perez to discuss projects that were previously assigned to her were ignored.  (See Docket No. 80-1 at ¶ 15-19, 22.)

In considering all the evidence presented by Plaintiff, the court finds that a reasonable jury could infer that defendants' failure to accommodate Plaintiff constitutes discrimination under Title I of the ADA.  Because a reasonable fact finder could credit the testimony of Plaintiff over that of defendants, he could also infer that defendants' stated reason for her termination was pretextual and used to obscure underlying discriminatory intent.  While such a finding is not necessarily imputed by the evidence, it is not unreasonable to think that such a conclusion could be reached when considering the evidence presented by the parties.  Plaintiff has successfully demonstrated that there are genuine issues of material fact that have to be resolved at trial.

Therefore, the Court **DENIES** defendants' motion for summary judgment on Plaintiff's Title I of the ADA claim.

### E.     Title V of the ADA

In the complaint, Plaintiff alleges that defendants retaliated against her in violation of 42

U.S.C. § 12203, and are liable to plaintiff under said law.[8]  Further Plaintiff contends that defendants including the Commonwealth of Puerto Rico and the House of Representatives, are also liable to her under 42 U.S.C. § 12202.

A retaliation claim under Title VII and under ADA requires that a plaintiff plead three elements: (1) that she engaged in an activity that is protected by statute; (2) that she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action.  See 42 U.S.C. § 2000e-3; Rivera-Colon v. Mills, 635 F.3d 9, 12 (1Cir. 2011) (citing Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)).  The causal connection requires that the employer have knowledge of the protected activity at the time of the adverse employment action.  See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79 (1st Cir. 2006).

Defendants contend that Plaintiff has failed to state the protected activity she engaged in that warranted the protections of ADA.  They also allege that Plaintiff failed to state the adverse employment action taken by the employer.  Finally, defendants allege that Plaintiff also failed to express the reasons why she argues that such protected activity is the motive for the adverse employment action.  Plaintiff responds by simply stating that "[I]n the absence of valid reasons given for her termination, and the failure of Defendants to follow the procedures established by the Code of Ethics of Employees of the House, Defendants interfered with Plaintiff's enjoyment of employment."  (See Docket No. 80 at 10.)  This bold legal assertion fails to plead the three abovementioned elements required to establish a retaliation claim under the ADA.

Therefore; Plaintiff's retaliation claim under the ADA is hereby **DISMISSED** with prejudice.

### F.        The Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Board of

---

[8] 42 U.S.C.A. § 12203 (a) defines Retaliation as: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter".

Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001).  Although by its terms the Eleventh Amendment applies only to suits against a State by citizens of another State, the Supreme Court has extended the Amendment's applicability to suits by citizens against their own States.  See Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001), Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72–73 (2000); College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669–670 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890).  The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court. See Kimel 528 U.S. at 73.

Puerto Rico has long been considered a state for Eleventhth Amendment purposes.  See Irizarry-Mora v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935 (1st Cir. 1993).  "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in official capacity suits brought against Puerto Rico officials where recovery will come from the public fisc."  See Cardona–Roman v. Univ. of P.R., 799 F. Supp. 2d 120, 129 (D.P.R. 2011) Culebras Enterprises Corp. v. Rivera Rios, 813 F.2d 506, 516 (1st Cir.1987) (citing Ramirez v. P.R. Fire Service, 715 F.2d 694, 697 (1st Cir. 1983)); Kentucky v. Graham, 473 U.S. 159 (1985).

In the case at bar, Plaintiff seeks damages for her employer's failure to accommodate her disability under Title I of the ADA.[9]  The Supreme Court has held that actions for monetary damages under Title I of the ADA are barred by the states' Eleventh Amendment immunity, but not those for injunctive or prospective relief.  See Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. at 374.

In the case at bar, Plaintiff's suit is under Title I of the ADA.  Accordingly, her claims for damages under the ADA are barred because the House of Representatives is an arm of the Puerto Rican government and is shielded by its immunity.  See Cardona–Roman v. Univ. of P.R., 799 F.

_____

[9] The ADA prohibits discrimination against the disabled in three realms of life: Title I prohibits discrimination in employment; Title II prohibits discrimination in access to public services; and Title III prohibits discrimination in public accommodations. 42 U. S .C. §§ 12112, 12132, 12182.

Supp. 2d 120, 129 (D.P.R. 2011) (finding ADA employment discrimination suit against the University of Puerto Rico barred by Eleventh Amendment immunity).  Plaintiff also sues defendants in their individual capacities, but this district has concluded that the ADA does not provide for individual liability.  Cardona–Roman, 799 F. Supp. 2d 128.

Therefore, Plaintiff's only surviving claim under the ADA is for injunctive and/or equitable relief.  See Ex Parte Young, 209 US 123 (1908),  The Ex parte Young doctrine has come to stand for an exception to Eleventh Amendment immunity in suits against state officials seeking prospective declaratory or injunctive relief under federal law.  See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, f. 24 (1st Cir. 2009).

Accordingly, the court **GRANTS** defendants' motion for summary judgment with regards to monetary damages under Title I of the ADA and defendants in their individual capacities.  Plaintiff's only surviving claim under the ADA is for prospective injunctive and/or equitable relief.

### G.        Damages Due to Discrimination under 42 U.S.C. §1983

Section 1983 does not create any independent substantive rights, but rather provides a cause of action or vehicle by which individuals may vindicate violations of their constitutional rights or rights protected by federal law.  See Albright v. Oliver, 510 U.S. 266 (1994); Cruz–Erazo v. Rivera–Montañez, 212 F.3d 617 (1st Cir. 2000).  Section 1983 merely provides remedies for deprivations of rights that are enshrined elsewhere.  See Oklahoma City v. Tuttle, 471 U.S. 808 (1985).  In the present matter, none of the underlying causes of action provide for individual liability.  Plaintiff is suing individual defendants under the ADA and as explained above, this legislation does not provide for individual liability.  Thus, Plaintiff has no valid claim under Section 1983.

Accordingly, Plaintiff's Section 1983 claims against individual defendants in their personal capacities are hereby **DISMISSED** with prejudice.

### H.        Rehabilitation Act Claims

Section 504 of the Rehabilitation Act prohibits discrimination against disabled individuals in any program or activity that receives federal funding. 29 U.S.C. §794 (a). It reads:

> No otherwise qualified handicapped individual in the United States, as defined in Section 7 (6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

1
2
3
4

program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

5   29 U.S.C. §794 (a).

6
7   Defendants contend that Plaintiff fails to establish a claim of discrimination under the
8   Rehabilitation Act because the House of Representatives is not a federally funded program or activity
    for purposes of Section 504.

9
10  To establish a case for discrimination under Section 504 of the Rehabilitation Act, Plaintiff
11  must allege that (1) she is disabled; (2) she sought to participate in a federally funded program or
12  activity, (3) she was otherwise qualified to participate in such program, and (4) she was denied such
13  participation —solely by reason of her disability. See Lesley v. Hee Man Chie, 250 F.3d 47, 52-53
    (1st Cir. 2001).

14
15  Regarding the first part of the test, defendants do not dispute that Plaintiff suffers from a
16  disability within the meaning of section 504 of the Rehabilitation Act.  (See Docket No. 67 at 7.)
17  With respect to the second prong of the test, Defendants contend that the House of Representatives
    is not a federally funded program or activity for purposes of Section 504 of the Rehabilitation Act.

18
19  Plaintiff counters that because the Commonwealth of Puerto Rico receives a myriad of
20  federal funds and the House of Representatives is the legislative branch of the Government of Puerto
21  Rico, it is an indirectly federally funded program.  (See Docket 80 at 5.)  Plaintiff provides the
22  "Consolidated Federal Funds Report for Puerto Rico, fiscal year 2009" as evidence of the federal
23  funds received by individuals, agencies, instrumentalities of the Commonwealth of Puerto Rico.
24  (See Docket No. 80-10.)  The Court finds that if it were to accept Plaintiff's argument it would be
25  opening the door for any government entity or agency to argue that it is a federally funded program
26  or activity under Section 504 of the Rehabilitation Act because the Commonwealth of Puerto Rico
    receives federal funds.  The Court believes that this was not Congress' intention.

27  In reality the Rehabilitation Act is program specific.  See Richard Foss v. City of Chicago,
28

817 F.2d 34 (7th Cir.; 1987) (Section 504 is by its terms program-specific. It proscribes discrimination only with respect to "programs" or "activities" receiving federal financial assistance. United States Department of Transportation v. Paralyzed Veterans of America, 477 U.S. 597; Consolidated Rail Corp. v. Darrone, 465 U.S. 624. The Rehabilitation Act refers to federally funded programs such as the ones listed in the "Consolidated Federal Funds Report for Puerto Rico, fiscal year 2009" provided as evidence by Plaintiff. (See Docket No. 80-10.)

It is an uncontested fact that the House of Representatives receives no federal funding, as defined by this regulation.  The fact that other instrumentalities of the executive branch of the Commonwealth of Puerto Rico do receive such funding does not make the House of Representatives a recipient of federal financial assistance.  Therefore, Section 504 of the Rehabilitation Act is not applicable to the House of Representatives.

Since Plaintiff failed to establish a claim of discrimination under the Rehabilitation Act, her claims under such statute are hereby **DISMISSED**.

### I.        Claims under Puerto Rico Laws

Plaintiff invokes the supplemental jurisdiction of the court to adjudicate her claims under Puerto Rico Laws 44 and 115, as well as Articles 1802 and 1803.  In Plaintiff's response in opposition to defendant's Motion for Summary Judgment she yields to defendants' argument that the individual defendants are not liable under Puerto Rico Laws 44 and 115.

### 1.        Law 115

With regards to personal supervisor liability under Puerto Rico's statute prohibiting retaliation in the workplace, Law 115, the Puerto Rico Court of Appeals found that it stems from the text of the act that the sanctions imposed therein are only against the employer, and thus, the statute contains no provision imposing personal liability. Accordingly, any action commenced under the provisions of Law No. 115 shall be filed only against the employer. See Rivera Maldonado v. Hospital Alejandro Otero Lopez, 614 F.Supp.2d 181 (DPR 2009).

In accordance with the foregoing, we find that Plaintiff's Law 115 claims against Defendants in their personal capacity are hereby **DISMISSED**.

### 2.        Law 44

Law 44 bans discrimination against the disabled by any public or private institution that receives funds from the Commonwealth of Puerto Rico. Specifically, Law 44 provides that said institutions may not take any action to "discriminate against persons with some type of physical or mental disability." 1 P.R. Laws Ann. § 504. This statute was modeled after the ADA. It was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA. See Arce v. ARAMARK Corp., 239 F.Supp.2d 153, 169 (D.P.R.2003). Thus, the elements of proof for a claim under Law 44 are essentially the same as for a claim under the ADA. See Román-Martínez v. Delta Maint. Serv., Inc., 229 F.Supp.2d 79, 85 (D.P.R.2002).

The Puerto Rico Supreme Court, "[h]as yet to rule on the question of individual liability under Law 44." Cardona Roman v. Univ. of P.R., 799 F. Supp. 2d 120, 131 (D.P.R. 2011). But courts in this District—and even the Puerto Rico Court of Appeals—have repeatedly "[h]eld that there is no individual liability under law 44." Id. & n. 10 (collecting cases). The rationale behind refusing to recognize individual liability under Law 44 was tersely explained by Judge Dominguez: "The ADA and Law 44 are almost identical, and as the ADA does not provide for individual liability, neither should Law 44." Id. at 132; see also e.g., Toledo-Colon v. Commonwealth, 812 F. Supp. 2d 110, 117 (D.P.R. 2011); Vazquez-Vazquez v. Checkpoint Sys. of P.R., Inc., 609 F. Supp. 2d 217, 220 (D.P.R. 2009).We find the analysis and logic applied by courts in this district compelling. The ADA and Law 44 are almost identical, and as the ADA does not provide for individual liability, neither should Law 44.

Accordingly, Plaintiff's Law 44 claims against the Individual Defendants are **DISMISSED** with prejudice.

### 3.      Article 1802

The Puerto Rico Civil Code, in pertinent part, provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Thus, to prevail in an action under Article 1802, Plaintiff must show: (1) that defendants acted negligently; (2) that she suffered damages; and (3) a causal link or connection between the actions/negligence and said damages. See Gierbolini-Rosa v. Banco Popular De P.R., 121 F.3d 695 (1st Cir. 1997); Bonilla v. P.R. Highway Auth., 368 F. Supp. 2d 113,

1

2

3     118 (D.P.R. 2005).  A showing on each of these three elements is required in order to be entitled to

4     an award under Article 1802.  Plaintiff yields to Defendants' arguments that the House of

5     Representatives, as well as the Commonwealth of Puerto Rico, enjoy immunity from Article 1802

6     claims.  (See Docket No. 80 at 4.)  However, defendants may be liable individually for their

      negligent acts.  Accordingly, Plaintiff's Article 1802 claims against the House of Representatives

      and the Commonwealth of Puerto Rico are **DISMISSED**.

7              However, Plaintiff's Article 1802 claims against the  individual defendants in their personal

8     capacities survive the motion for summary judgment.  Notwithstanding, the court declines to

9     exercise supplemental jurisdiction over said state law claims.  Here compelling reasons lie for the

10    court to do so as per 28 U.S.C. § 1367.  First, all federal claims requiring jury trial under the seventh

11    Amendment have been dismissed.  The only remaining claim is one for equitable relief (i.e.,

12    reinstatement) for which no jury trial attaches.  See 28 U.S.C. § 1367 (c) (3) and (4).

13             Second, if the court were to assume jurisdiction over Plaintiff's damage claims they would

14    substantially predominate over the one remaining equitable claim.  More so, the court would have

15    to first try without a jury the ADA Title I claim, and then before a jury the tort claims against

16    individual defendants in their personal capacities, or vice versa.  See 28 U.S.C. § 1367 (c) (2).  More

17    so, at this stage, no trial date has been set, nor have the parties submitted a proposed pretrial order,

18    nor appeared for a settlement conference.  Contra Redondo Construction Corp. v. Izquierdo, 662

19    F.3d 42, 49 (1st Cir. 2011) (holding district court should exercise its supplemental jurisdiction over

20    state law claims when trial was scheduled four days later and claims were pending for over six

21    years).

22             Finally, the court finds exceptional circumstances to exist, which warrant declining to

23    exercise supplemental jurisdiction.  See 28 U.S.C. § 1367 (c) (4).  Retaining jurisdiction of such state

24    law claims would create a logistically, and unfounded dangerous precedent, which the court declines

25    to adopt.  Here, as this opinion demonstrates, there was no basis for any of Plaintiff's federal jury

26    trial claims.  Allowing, thus, state law tort claims to now proceed, in addition and separate to a

27    federal equitable claim opens the floodgates for all Plaintiffs with only viable equitable claims to

28    attempt to obtain jury trials in federal court for state law matters arising from the same common

1
2

nucleus of operative fact.  This would be different, had a viable federal jury trial claim existed.

Accordingly, supplemental individual Article 1802 claims against defendants are **DISMISSED**

3

without prejudice.

4

**4.**       **Damages Claims under the Commonwealth's Libel and**

**Defamation Statute, P.R. Laws Ann. tit. 32, §3141-49.**

5
6

In order for a defamation claim to be successful, plaintiff has to demonstrate that: (1) the

7

information is false; (2) if the person is a public figure, that the expressions were made willing and

8

wantonly, that is, knowing they were false or with reckless disregard of its truthfulness; (3) if the

9

person is a private figure, that the expressions were made negligently; and (4) the real damages

10

suffered as a result of such publication.  See Torres Silva v. El Mundo, 106 D. P. R. 415, 427 (1977)

11

6 P.R. Offic. Trans 581; Oliveras v. Paniagua Diez, 115 D.P.R. 257, 264 (1984) 15 P. R. Offic.

12

Trans. 346.  Plaintiff simply alleges that there was a newspaper article "which placed Plaintiff in a

13

bad light and if the defamation were to be proven defendants would be liable under Art.1802 and

14

under the defamation statute".  (See Docket No. 80 at 11.)

15

Plaintiff cites to paragraphs 30 and 47 of her sworn statement as evidence of defamation.

16

(See Docket No. 80-1 at ¶ 30, 47.)  In the aforementioned paragraghs Plaintiff simply mentions an

17

article in the newspaper "El Nuevo Dia" where Defendant Jenniffer Gonzalez talks about the reasons

18

for Plaintiff's termination.  However, Plaintiff fails to provide this newspaper article as evidence.

19

Also, in paragragh 47 of the Sworn Statement, Plaintiff states that Defendant Jenniffer Gonzalez

20

made statements to the press about her work related performance that have negatively affected her

21

reputation.  However, Plaintiff does not provide direct evidence of those statements.  Evidence such

22

as hearsay evidence which would not be admissible at trial cannot be considered on summary

23

judgment.  See Garside v. Osco Drug, 895 F.2d 46, 50 (1st Cir. 1990).

24

Therefore, in the absence of evidence in the record to meet the requirements for a libel or

25

slander tort action under local law, Plaintiff's claims are hereby **DISMISSED**.

26

**IV.    Conclusion**

27

For the reasons set forth above, the court **GRANTS in part** and **DENIES in part** defendants'

28

motion for summary judgment.  (Docket No. 67).  Plaintiff's claim for discrimination under Title

**Civil No. 10-1265 (GAG)**                      26

I of the ADA remains before the court to be adjudicated where Plaintiff only has a right for equitable or prospective injunctive relief.  Plaintiff's local claim under Article 1802 against the  individual defendants in their personal capacities is dismissed without prejudice.  All other federal and state law claims are dismissed with prejudice.


**SO ORDERED**.

In San Juan, Puerto Rico this 16th day of April, of 2012.

                                        *S/Gustavo A. Gelpí*
                                        GUSTAVO A. GELPÍ
                                        United States District Judge